UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11510-GAO

JIN-MING LIN and CHI-WAI CHAO,
on behalf of themselves and on behalf of all others similarly situated,
Plaintiffs,

v.

CHINATOWN RESTAURANT CORP., JOYCE P.Y. HAYES, and WILLIAM WAINRIGHT,
Defendants.

OPINION AND ORDER
March 23, 2011

O'TOOLE, D.J.

Employees of the Chinatown Restaurant Corporation ("Chinatown") have brought suit for unpaid minimum wages and overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and its state-law counterparts. Pending before me are several motions to compel discovery. Chinatown has moved to compel the plaintiffs' responses to written discovery seeking information about their immigration status and has opposed the plaintiffs' motion to compel its responses to written discovery seeking information about class members. Relying on Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), Chinatown asserts that illegal aliens cannot recover unpaid wages, and by extension cannot represent a class seeking unpaid wages.

In Hoffman, the U.S. Supreme Court held that the National Labor Relations Board ("NLRB") lacked the discretion to award back pay to illegal aliens whose employment had been terminated in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq.. Id. at 142. The Court reasoned that awarding back pay to illegal aliens undermined federal

immigration policy as expressed in the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, 100 Stat. 3359 (1986). Id. at 150. The IRCA made combating the employment of illegal aliens central to federal immigration policy. Id. at 147. The Court explained that an award of "backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by criminal fraud" would run counter to policies underlying the IRCA. See id. at 149. When, as was the case in Hoffman, an agency's "chosen remedy trenches upon a federal statute or policy outside [its] competence to administer," that remedy may be required to yield. Id. at 147.

In the wake of Hoffman, lower courts have grappled with the question whether the decision implicates illegal aliens' rights under other federal and state statutes. These courts have consistently limited Hoffman narrowly to its facts and declined to apply its principle or reasoning to various other laws and remedies. See, e.g., Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 247 (2d Cir. 2006) (New York workers' compensation laws); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1066 (9th Cir. 2004) (Title VII); Martinez v. Mecca Farms, Inc., 213 F.R.D. 601, 604 (S.D. Fla. 2002) (Migrant and Seasonal Agricultural Worker Protection Act).

This case presents the question whether Hoffman affects illegal aliens' rights to recover unpaid wages under the FLSA.

Although this case presents a question of first impression in this circuit, other courts around the country that have considered it have answered this question in the negative. See, e.g., Villareal v. El Chile, Inc., 266 F.R.D. 207, 212-14 (N.D. Ill. 2010); Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 321-25 (D.N.J. 2005); Singh v. Jutla & C.D. & R's Oil, Inc., 214 F. Supp. 2d 1056, 1060-62 (N.D. Cal. 2002). Review of those cases indicates that five reasons have been relied on by those courts in concluding that illegal aliens' rights to recover unpaid wages

under the FLSA is unaffected by the ruling in <u>Hoffman</u>: first, <u>Hoffman</u> dealt with awards for work not yet performed (work that the discharged workers would have performed but for the wrongful discharge), while FLSA awards deal with work already performed; second, illegal aliens are "employees" within the meaning of the FLSA and thus entitled to its remedies; third, post-<u>Hoffman</u>, the U.S. Department of Labor has taken the position that illegal aliens can recover under the FLSA; fourth, permitting recovery under the FLSA supports, rather than undermines, federal immigration policy; and fifth, a growing consensus on this issue has emerged and should be followed. I do not find any of these reasons to be persuasive.

First, courts have asserted that awards for work already performed do not implicate federal immigration policy in the same way as awards for work not yet performed. <u>See, e.g.</u>, <u>Villareal</u>, 266 F.R.D. at 213; <u>Zavala</u>, 393 F. Supp. 2d at 322. This assertion rests on too narrow and fastidious a reading of <u>Hoffman</u>. In <u>Hoffman</u>, the Court provided two examples of how awards for work not yet performed under the NLRA "condone[] and encourage[] future violations" of federal immigration policy. 535 U.S. at 150. Awards for back pay under the NLRA are available only if the terminated employee remains "available" for work (i.e., physically present in the United States) and attempts to mitigate his damages by obtaining a new job, both conditions which, according to the Court, would involve new violations of the ICRA. <u>See</u> <u>id.</u> The <u>Villareal</u> and <u>Zavala</u> cases distinguished awards for work already performed under the FLSA on the ground the FLSA does not require either availability or mitigation. <u>See</u> 266 F.R.D. at 213; 393 F. Supp. 2d at 322.

That distinction, however, misses what appears to be <u>Hoffman</u>'s unmistakable broader point. The Court emphasized that an award of "backpay to an illegal alien for years of work not performed, *for wages that could not lawfully have been earned, and for a job obtained in the first*

*instance by a criminal fraud*" would condone and encourage violations of federal immigration policy. See Hoffman, 535 U.S. at 149-50 (emphasis added). In other words, the problem the Hoffman Court had with awards of back pay was the conflict with federal immigration policy because the wages could not have been earned lawfully. Awards for work already performed under the FLSA would implicate federal immigration policy in the same way. Where claimed wages could not have been earned lawfully (and had not been), an FLSA award would also give a remedy to illegal aliens employed in violation of federal immigration policy. Courts that have relied on the distinction between wages for illegal work to be done in the future, on the one hand, and wages for illegal work done in the past, on the other hand, have therefore focused on a distinction without a difference as far as the reasoning of the Hoffman case is concerned.

It is worth noting that the Hoffman Court itself declined to draw the suggested distinction. During oral argument, one justice posed the following question to Hoffman's counsel:

> May I ask if your position would apply if this were a violation of the Fair Labor Standards Act instead of the labor act? If the employer had underpaid the employee, would he have a right to back pay?
>
> . . .
>
> [I]f you're sticking with your theory that everything [an illegal alien] did on that job . . . was unlawful, so why should he be paid anything for unlawful activity? You're making a distinction between the Fair Labor Standards Act and the NLRA, but your theory, I think, would cover both.

See Tr. of Oral Arg. at 14-15, Hoffman, 535 U.S. 137 (No. 00-1595). Although Hoffman's counsel invited the Court to draw a distinction between wages not yet earned and wages already earned, as recent cases have since done, id. at 14, the Court not only declined the invitation but also signaled a recognition that awards for wages not yet earned and awards for wages already earned implicate federal immigration policy in similar ways. See also Ruben J. Garcia, Ghost

<u>Workers in an Interconnected World: Going Beyond the Dichotomies of Domestic Immigration</u> <u>and Labor Laws</u>, 36 U. Mich. J.L. Reform 737, 750 (2003) ("[T]he majority's overriding concern [in <u>Hoffman</u>] about immigration control[] would seem to prevent even minimum wage and overtime pay for undocumented workers.").

Second, courts have observed that illegal aliens are within the definition of "employees" under the FLSA, and so they must be covered by its provisions. <u>E.g.</u>, <u>Villareal</u>, 266 F.R.D. at 212-13; <u>Montoya v. S.C.C.P. Painting Contractors, Inc.</u>, 589 F. Supp. 2d 569, 577 (D. Md. 2008); <u>see also</u> <u>In re Reyes</u>, 814 F.2d 168, 170 (5th Cir. 1987) (recognizing FLSA's coverage of illegal aliens pre-<u>Hoffman</u>). I do not dispute that an illegal worker would fall within the FLSA definition of "employee." The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Individuals not specifically exempted fall within this definition, <u>Powell v. U.S. Cartridge Co.</u>, 339 U.S. 497, 516-17 (1950), and illegal aliens are not specifically exempted, 29 U.S.C. § 203(e). I dispute only the inference that other courts have drawn from this legal proposition, that is, because illegal aliens are "employees" as defined by the FLSA, they must necessarily be entitled to monetary remedy under the FLSA.

Again, <u>Hoffman</u> itself undermines this inference. The Court in <u>Hoffman</u> affirmed its prior holding in <u>Sure-Tan, Inc. v. NLRB</u>, 467 U.S. 883 (1984), that illegal aliens are "employees" under the NLRA. 535 U.S. at 150 n.4. Nevertheless, the Court held that these "employees" could not recover back pay, though they might be granted other kinds of relief, such as obtaining a cease and desist order or an order that the offending employer post a notice detailing its prior unfair practices. <u>See</u> <u>id.</u> at 152. It is clear that under <u>Hoffman</u> what remedies are available to illegal aliens for violations of their rights under federal labor laws is a question distinct from whether they are "employees" under federal labor law. <u>See</u> <u>Agri Processor Co. v. NLRB</u>, 514

F.3d 1, 7 (D.C. Cir. 2008). Illegal aliens' status as "employees" under the FLSA therefore does not answer the question whether illegal aliens can recover unpaid wages under the FLSA.

Third, courts have deferred to the U.S. Department of Labor's position that illegal aliens are entitled to recover under the FLSA for unpaid wages post-Hoffman. See, e.g., Zavala, 393 F. Supp. 2d at 324 (citing U.S. Dep't of Labor, Fact Sheet #48: Application of U.S. Labor Laws to Immigrant Workers: Effect of Hoffman Plastic Decision on Laws Enforced by the Wage and Hour Division, available at http://www.dol.gov/whd/regs/compliance/whdfs48.htm); Flores v. Amigon, 233 F. Supp. 2d 462, 464 n.1 (E.D.N.Y. 2002) (same).

Hoffman counsels against this deference. Just as the Department of Labor has taken the position that illegal aliens have a remedy for unpaid wages under the FLSA, so too the NLRB had taken the position in Hoffman that illegal aliens had a remedy for back pay under the NLRA. See 535 U.S. at 141. The Court in Hoffman did not defer to the NLRB's position, noting that when an agency's "chosen remedy trenches upon a federal statute or policy outside [its] competency to administer, [its] remedy may be required to yield." Id. at 147. Whether the Department of Labor recognizes a remedy for unpaid wages under the FLSA therefore does not answer the relevant question—whether that remedy should or must be foreclosed because it improperly trenches on federal immigration policy. With all respect to the Executive Branch, the Department of Labor cannot answer that question. See id. at 143-44 (noting that an agency's "interpretation of a statute so far removed from its expertise merit[s] no deference"); NLRB v. Bildisco & Bildisco, 465 U.S. 513, 529 n.9 (1984) ("While the Board's interpretation of the NLRA should be given some deference, the proposition that the Board's interpretation of statutes outside its expertise is likewise to be deferred to is novel.").

Fourth, courts have reasoned that permitting illegal aliens to recover unpaid wages under the FLSA supports, rather than undermines, federal immigration policy. E.g., Flores, 233 F. Supp. 2d at 464; Singh, 214 F. Supp. 2d at 1061-62; see also Patel v. Quality Inn S., 846 F.2d 700, 704 (11th Cir. 1988) (recognizing pre-Hoffman that "the FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA"). These courts have observed that the IRCA's goal of combating the employment of illegal aliens is served not only by eliminating illegal aliens' economic incentive to seek jobs, but also by eliminating employers' economic incentive to hire illegal aliens. Patel, 846 F.2d at 704; Flores, 233 F. Supp. 2d at 464; Singh, 214 F. Supp. 2d at 1061-62. Focusing on the employer-side economics, these courts have reasoned that permitting illegal aliens to recover under the FLSA supports federal immigration policy because requiring payment of minimum wages and overtime reduces one employer incentive for hiring illegal aliens—their willingness to work for less than minimum wage. See Patel, 846 F.2d at 704; Flores, 233 F. Supp. 2d at 464; Singh, 214 F. Supp. 2d at 1061-62.

Similar arguments, however, were advanced in Justice Breyer's dissent in Hoffman. See 535 U.S. at 155-56 (Breyer, J., dissenting). Justice Breyer argued that denying back pay to illegal aliens permitted employers to engage in anti-union behavior at little to no cost. Id. at 155. Permitting cost-free anti-union behavior, Justice Breyer reasoned, "runs directly contrary to the immigration statute's basic objective" by creating an incentive for employers to hire illegal aliens, thereby creating an incentive for illegal aliens to enter the United States. Id. Put another way, Justice Breyer posited that permitting illegal aliens to recover back pay would serve the goals of federal immigration policy by eliminating another of employers' economic incentives for hiring illegal aliens—the ability to obtain a non-union workforce. The argument failed to

persuade the majority in <u>Hoffman</u>, and it is not available now as an argument to explain or distinguish <u>Hoffman</u>'s relevance to the present issue.

<u>Hoffman</u>, <u>Patel</u>, <u>Flores</u>, and <u>Singh</u>, read together, demonstrate that the economic incentives underpinning federal labor and immigration policy are in tension. "[E]very remedy extended to undocumented workers under the federal labor laws provides a marginal incentive for those workers to come to the United States" and "every remedy denied to undocumented workers provides a marginal incentive for employers to hire those workers." <u>See</u> <u>Singh</u>, 214 F. Supp. 2d at 1062. This economic incentives argument can be used on either side of the employer-employee relationship; the mirror-image arguments end up canceling each other out.

The final reason relied on by courts is "the growing chorus acknowledging the right of undocumented workers to seek relief for work already performed under the FLSA." <u>Zavala</u>, 393 F. Supp. 2d at 322; <u>accord</u> <u>Villareal</u>, 266 F.R.D at 214. This is unconvincing. Appeal to consensus is fine when it is more important to have a clear rule than to have the right rule, but that sort of consensus supports only an outcome, not a justification.

Nonetheless, while I find the reasoning advanced by other courts in holding that illegal aliens may recover for unpaid wages under the FLSA to be insufficient, I come to the same ultimate conclusion for a different reason that has not, so far as I know, yet been relied on. Awards for back pay under the NLRA, at issue in <u>Hoffman</u>, are discretionary. <u>See</u> 29 U.S.C. § 160(c) (Courts may order "reinstatement of employees with or without back pay . . . ."); <u>see also</u> <u>NLRB v. Harding Glass Co.</u>, 500 F.3d 1, 8 (1st Cir. 2007) (NLRB has "broad remedial powers" under 29 U.S.C. § 160(c) including "discretion both to determine that back pay is appropriate . . . and to compute the back pay amount."). As <u>Hoffman</u> recognized, agencies are required to exercise their discretion in light of other federal policies. 535 U.S. at 146 ("In devising remedies

for unfair labor practices, the Board is obliged to take into account [other] equally important Congressional objective[s].") (internal quotation omitted). This basic tenet of administrative law is what first prompted the Court in <u>Hoffman</u> to look at federal immigration policy as a limit on the NLRB's authority and discretion to award back pay in the circumstances. <u>See</u> <u>id.</u> at 143-44.

In contrast, awards for unpaid wages under the FLSA are not discretionary, but rather a matter of statutory entitlement when the necessary factual predicate has been established. 29 U.S.C. § 216(b) ("Any employer who violates the [minimum wage or overtime provisions of the FLSA] *shall be liable* to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation.") (emphasis added). Courts do not have discretion to deny the award of FLSA damages when they have been proved. Adjudication of an FLSA cause of action does not call upon the court to make a discretionary policy- or interest-balancing assessment. <u>See</u> Keith Cunningham-Parmeter, <u>Redefining the Rights of Undocumented Workers</u>, 58 Am. U. L. Rev. 1361, 1389 (2009) (remarking that the nondiscretionary nature of back pay under the FLSA "leaves no room for any type of <u>Hoffman</u>-inspired balancing between federal labor and immigration objectives").

Of course, the tension between policies underlying the FLSA, on the one hand, and the IRCA, on the other, continues to exist. In <u>Hoffman</u>, the Court was able to find a resolution by giving priority to the statutory policy of the IRCA over the administrative discretion of the NLRB. That resolution is not possible where both poles of the conflict are statutory directives. A court entertaining an FLSA suit lacks the authority or discretion to resolve the tension. If a plaintiff makes out an FLSA case, he is entitled to an FLSA remedy, any obstruction or interference with immigration policy notwithstanding. As Judge Walker of the Second Circuit noted, after that circuit tackled a particularly confounding case of conflict preemption under

Hoffman, "judges are especially ill-suited to divining the unexpressed will of Congress when it comes to hot-button and ever-shifting issues like immigration policy." Madeira, 469 F.3d at 254 (Walker, C.J., concurring). Any remedy for an incompatibility between federal labor and immigration policies will have to come from Congress, not the lower courts.

For the foregoing reasons, the plaintiffs' immigration status is irrelevant to their FLSA claims and their suitability to lead a class. The defendants' motions to compel (dkt. nos. 28 & 29) are DENIED. The plaintiffs' motion to compel (dkt. no. 31) is GRANTED.[1]

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[1] The plaintiffs are also entitled to information about Chinatown's corporate structure because "employer" under the FLSA encompasses a corporation's "chief executive officer/major shareholder." Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 24 (1st Cir. 1988).