UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JIN MING LIN, CHI WAI CHAO, YOOK THAI CHEAH, MING F. FUNG, MUOI GIANG, YUEN YUE SOOHOO, and MEI ZHI, <br><br> Plaintiffs, <br> v. <br><br> CHINATOWN RESTAURANT CORP., and JOYCE P.Y. HAYES, <br><br> Defendants. | Civil Action No. 09-11510-GAO |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A MANDATORY AWARD OF COSTS AND ATTORNEYS' FEES PURSUANT TO 29 U.S.C. § 216(b)**

I. **INTRODUCTION**

Plaintiffs Jin-Ming Lin and Chi-Wai Chao brought this action over three years ago seeking to vindicate their rights under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), to receive overtime compensation to which they were denied by Defendant Chinatown Restaurant Corporation and its President and owner Defendant Joyce P.Y. Hayes ("Defendants"). Failure to pay overtime was a general policy of the defendants. Plaintiffs therefore sought to join as a class the other, many employees of the defendants who suffered from the same harms as Plaintiffs Lin and Chao. Although a class was never certified, five additional plaintiffs were joined in this action.[1] All six plaintiffs prevailed at trial.[2]

---

[1] It has been the view of plaintiffs' counsel over the course of this case that defendant Hayes played a significant role in deterring employees and former employees from joining this action. See Docket Nos. 67-68.

[2] One of the plaintiffs could not participate at trial due to his inability to travel to Massachusetts.

1

As the prevailing party, pursuant to 29 U.S.C. § 216(b), plaintiffs submit this memorandum of law in support of their motion for costs and attorney's fees. The established method of determining fees under the fee-shifting provision of the FLSA is the lodestar approach, which computes attorney's fees by multiplying the number of hours reasonably expended by the market rate for such services. *Mogilvesky v. Bally Total Fitness Corporation*, 311 F.Supp.2d 212, 216 (D.Mass. 2004). Applying those principles here, Plaintiffs request that they be awarded fees and costs as follows:

| Attorney | Hours | Rate | Total |
| --- | --- | --- | --- |
| Myong Joun | 588.20 | $375 | $220,575.00 |
| Myong Joun | 97.30 | $200 | $19,460.00 |
| Jeffrey Wiesner | 213.80 | $350 | $74,830.00 |
| Jeffrey Wiesner | 36.10 | $200 | $7,220.00 |
| Expenses | | | $11,185.28 |
| **TOTAL** | | | **$333,270.28** |

The results obtained, the complexity of the issues involved, the number of plaintiffs joined, the efficiency and skill with which Plaintiffs' counsel litigated this case, the current marketplace, the defense position during the litigation, and the public policy underpinnings of the FLSA all justify Plaintiffs' request. In support of this petition, Plaintiffs submit the following:

    Ex. 1: Declaration of Myong J. Joun
    Ex. 2: Declaration of Jeffrey P. Wiesner
    Ex. 3: Summary of attorneys fees and expenses
    Ex. 4: Detailed records of attorneys fees billed at regular rate for Atty Joun
    Ex. 5: Detailed records of attorneys fees billed at reduced rate for Atty Joun
    Ex. 6: Detailed records of attorneys fees not billed for Atty Joun
    Ex. 7: Detailed records of attorneys fees billed at regular rate for Atty Wiesner
    Ex. 8: Detailed records of attorneys fees billed at reduced rate for Atty Wiesner
    Ex. 9: Detailed records of attorneys fees not billed for Atty Wiesner
    Ex.10: Affidavit of Howard Friedman
    Ex.11: Affidavit of Paul Merry
    Ex.12: Affidavit of Kevin Peters
    Ex.13: Affidavit of Michael L. Altman
    Ex.14: Detailed records of expenses billed

The basis for this award is set forth below in this memorandum.

## II. LITIGATION SUMMARY

Under the FLSA, an employee who works more than 40 hours in a "workweek" is entitled to be paid "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[3] From the beginning, defendants relied on the business records of the restaurant to support their position regarding the amounts employees were paid, the hours they worked, and their pay rates. Despite knowing that these records were false, Defendants were steadfast in their position over the course of this litigation that none of its employees worked more than 40 hours a week.

Defendants' position required Plaintiffs' counsel to engage in substantial litigation and close analysis of legions of records to sort out Defendants' misrepresentations and to prepare for the Defendants' defenses at trial. Defendants were unwavering in their resolve to obscure the actual employment practices of the restaurant. Indeed, even after this action was brought, rather than rectifying those practices Defendant Hayes forced her employees on pain of termination to sign false statements ("contracts" as she referred to them) purporting to certify erroneous hours and amounts of pay. Defendant Hayes under oath at trial, in the face of demonstrable evidence to the contrary, continued to adhere to the false representations contained in her records.

Plaintiffs, in contrast, sought to streamline this litigation. Most significantly, at the status conference on June 4, 2012, in order to avoid further delay of the trial in this case, and to narrow the issues, plaintiffs consented in open court to proceed solely with the FLSA claim to avoid

---

[3] The full text of 29 U.S.C. § 207(a)(1) provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

various issues the defendants were raising which would have created even more protracted litigation.

After a five-day trial that began on October 22, 2012, the jury returned a verdict in favor of each of the six plaintiffs and awarded them the overtime wages that were due to them. The jury completely rejected the defendants' deliberate fiction that no employee worked more than 40 hours per week. It is noteworthy that the jury submitted a question during its deliberation asking whether it had the power to award punitive damages and, if so, whether there was a maximum amount that it could award to punish the defendants.

### III. STANDARD FOR DETERMINING ATTORNEYS' FEES UNDER THE FLSA

#### A. The Lodestar Approach – General Principles

The Fair Labor Standards Act ("FLSA") mandates an award of costs and fees to a prevailing party. 29 U.S.C. § 216(b); *Brooklyn Saving Bank* v. *O'Neil,* 324 U.S. 697, 709 (1945). The established method of determining fees under the fee-shifting provision of the FLSA is the lodestar approach, which computes attorney's fees by multiplying the number of hours reasonably expended by the market rate for such services. *Mogilvesky v. Bally Total Fitness Corporation*, 311 F.Supp.2d 212, 216 (D. Mass. 2004). Factors that influence the formulation and application of the lodestar, include (1) the complexity of the issues involved and the results obtained; (2) the efficiency with which the controversy was litigated; (3) the experience, reputation, and ability of the attorneys; and (4) fee awards made in similar cases. *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 fn. 3 (1st Cir.1997), citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

With respect to the hourly rate assigned to the lodestar, there is no distinction between core and non-core work. *System Management Inc. v. Loiselle*, 154 F.Supp. 2d 195, 209 (D. Mass. 2009.) It is presumed that the lodestar will yield a presumptively correct result. *Id*.

### 1. **Complexity of Issues**

The two original plaintiffs, Lin and Chao, had simple claims: Defendants failed to compensate them for their overtime work. Various factors over the course of this protracted litigation increased the complexity of this case which in turn created significant required work for plaintiffs' counsel. The increase in complexity and concomitant effort was, as set out below, directly attributable to the defendants.

First, as was alluded to above, defendants employed an elaborate scheme to conceal their illegal employment practices through the generation of false records and off-the-book cash payments. The records intentionally misrepresented that each employee had an hourly rate, worked by the hour, and was paid a certain amount. All of this information was false. At trial it was revealed that employees were paid a set amount per month, not by the hour, with pay periods every two weeks. Employees had no hourly rate, and they did not work by the hour. Even the total amount paid indicated in the records was false because each employee was paid off the books by the defendants in cash at each pay period. It is difficult to overstate the confusion and extra effort occasioned by defendants' false records. Plaintiffs were required to analyze the records, engage in significant discovery disputes over the records, and be prepared to deal with the defendants' possible defenses at trial, which were unpredictable. Never in plaintiffs' counsel's careers were the facts in a civil case between the parties more starkly at odds and, with one parties' false position bolstered by business records.

Second, it became clear soon after this litigation began that defendants' illegal employment practices were not unique to the original plaintiffs. Plaintiffs therefore sought to join others in a collective and class action. Although a class was never certified--a circumstance for which there is evidence that defendants played a significant role in deterring otherwise would-be plaintiffs--five more plaintiffs were joined in this action. Further significant discovery and

analysis of false payment records became necessary for each of the new plaintiffs.

Third, defendants took the position that the immigration status of each of the plaintiffs was discoverable on the basis that plaintiffs without status in the United States could not represent a class. They also sought to attack the credibility of the plaintiffs claims that they were denied overtime on the basis of their supposed lack of legal immigration status. Defendants position on this issue created further litigation that resulted in substantial briefing, a lengthy opinion by this Court, as well as a response to a frivolous Motion for Reconsideration of this Court's opinion.

Finally, further contributing to plaintiffs' efforts in this case was that all but one of the plaintiffs in this case spoke only Chinese. The confusion wrought by the defendants' records and falsities were made even more difficult to sort out by the significant language and accompanying cultural barriers. Every conversation with the plaintiffs required pre-arrangements with a Chinese interpreter, and conversations required at least double the time they ordinarily would have taken to conduct.

Moreover, the Courts have generally regarded the issues that arise in FLSA cases as complex. As reflected in recent decisions of this Court and the First Circuit, the issues involved in this action, including determining the FLSA "regular rate" and determining the amount of FLSA back pay an employee might be entitled to receive, are complex. See *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003); *Parolin v. City of Boston*, 327 F.Supp.2d 101 (D.Mass. 2004); *Lupien v. City of Marlborough*, *O'Hara v. Menino*, 253 F.Supp.2d 147 (D.Mass 2003); *Murphy v. Town of Natick*, 516 F.Supp.2d 153 (D.Mass. 2007); *Harris v. City of Boston*, 312 F.Supp.2d 108 (D.Mass. 2004). "FLSA claims typically involve complex mixed questions of fact and law- e.g., what constitutes the 'regular rate,' the "workweek," or 'principal' rather than 'preliminary or postliminary' activities. These statutory questions must be resolved in light of

6

volumes of legislative history and over four decades of legal interpretation and administrative rulings" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728,743 (1981.) As reflected in the summary, this complexity necessitated a significant amount of legal research and considerable skill in attaining the result attained here.

## 2. Results Obtained and Its Significance

Despite defendants elaborate attempts to evade liability through falsification of its records and false testimony, the jury returned a verdict in favor of all plaintiffs and against all defendants. The Court then doubled the jury award as liquidated damages. Plaintiffs' victory must be viewed as total and complete.

The significance of the result in this case reaches far beyond the monetary award (if it becomes collectable) for each of the Plaintiffs. This Court made a substantial ruling with regard to the use a defendant may make of the immigration status of a plaintiff in an FLSA action. Clearly, many of these cases involve immigrants. This Court's ruling provides a significant measure of protection from defendants who would use immigration status to deter would-be plaintiffs from seeking redress for illegal employment practices.[4]

## 3. Counsel Exercised Billing Judgment

The Plaintiffs have attached the billing records of Attorney Myong J. Joun of Joun Law Offices,[5] and Attorney Jeffrey P. Wiesner of Stern, Shapiro, Weissberg & Garin, LLP,[6] for legal work performed here, including time spent but billed at a reduced rate and time spent but not billed at all. The summaries are based on contemporaneous records, and are specifically detailed

---

[4] Docket no. 34.

[5] Exs. 4-6.

[6] Exs. 7-9.

to describe the nature of the legal work performed.[7] As explained below, the fee request has been edited to reflect proper billing practices.

### a. The Amount of Time Billed is Reasonable

The total hours included in this petition is reasonable. As discussed above, much of the hours were spent on analyzing thousands of records obtained in discovery in order to refute defendants' claim that no employee worked more than 40 hours a week. Counsel was forced to spend additional time to counter the defendants' steadfast denial that their employees were paid partly in cash and to calculate damages for each of the plaintiffs based on the various differing scenarios created by defendants. Despite this, counsel worked efficiently enough that almost a third of the total hours was spent in the final two months of litigation preparing for and conducting the trial.

Moreover, as mentioned above, this was a case where counsel could not communicate with most of the plaintiffs without the assistance of an interpreter which necessitated not only additional expenses but additional time to meet with their clients and to prepare them for trial. Indeed, the trial itself took longer than probably otherwise but for the necessity of interpretations.

### b. Counsel Appropriately Allocated Work and Either Discounted Time or Did Not Bill At All

As shown by the bills submitted, Attorney Wiesner worked on specific tasks when needed to avoid duplication. If two lawyers attended a deposition, only the time for one attorney was billed.[8] Counsel also did not duplicate their representation of the six plaintiffs at trial. Work was allocated equally between the two attorneys in presenting arguments and examining witnesses.

---

[7] Ex. 1, Joun Decl. ¶12.

[8] Ex. 1, Joun Decl. ¶13.

In addition, counsel did not bill for more than 100 hours of time spent by an associate attorney who assisted in preparing for and who was present throughout the trial to assist plaintiffs' counsel.[9] Counsel have billed time spent traveling to and from meetings, depositions and court, time spent waiting for the jury verdict and time spent on this fee petition at a reduced rate of $200 an hour. Even time spent communicating with co-counsel has been billed at this reduced rate for one attorney and not billed at all for the other attorney. Further, despite best efforts, inevitably some time was not recorded. Nevertheless, time not recorded on contemporaneous time records was not billed. If two attorneys noted different amounts of time for the same conference, only the lower amount was billed for one attorney and no time was billed for the other attorney in order to avoid unnecessary duplication.

Editing the bills consisted of only deducting from the recorded time as described above. A total of $64,740.00 has not been billed in exercise of billing judgment.[10]

### 4. Attorneys' Reputation, Experience, and Ability

#### a. Attorney Myong J. Joun

Attorney Myong J. Joun is a graduate of the University of Massachusetts, *magna cum laude* (1994) and Suffolk University Law School (1999). He is admitted to practice in the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, United States Court of Appeals for the First Circuit and the United States Supreme Court.

---

[9] Attorney Mischa Karplus, a 2007 graduate of Boston University School of law, began his employment at Attorney Joun's office in September 2012. Almost immediately, he began to work exclusively on this case assisting counsel in preparation for trial. He was also present in court throughout the trial. However, out of billing judgment, plaintiffs do not bill for any of Attorney Karplus's time spent on this case. Ex. 1, Joun Decl. ¶14.

[10] Plaintiffs did not bill for $42,297.00 of recorded time, Ex. 1, Joun Decl. ¶14, and another $22,442.50 was reduced by billing at a lower rate, Ex. 1, Joun Decl. ¶15.

Since his admission to the bar, Attorney Joun's practice has focused on civil rights law. From 1999 to 2007, he was an associate at the Law Offices of Howard Friedman, P.C. litigating civil rights cases generally and §1983 police misconduct cases in particular. Since 2007, Attorney Joun has maintained his own practice in the areas of criminal defense and civil rights with an emphasis on police misconduct and employment cases. He is a member of several bar associations and has held various leadership roles. He has served on the boards of several leading civil rights organizations and is active in the community. He has lectured on civil rights and civil liberties issues for numerous bar associations, law schools and training programs. Attorney Joun has significant experience litigating complex civil rights cases including multiple class action lawsuits. His declaration, attached as Exhibit 1, sets out his full background and experience.

In support of the requested hourly rate of $375 for Attorney Joun, plaintiffs have submitted affidavits from Attorneys Howard Friedman and Paul H. Merry.[11]

### b. Attorney Jeffrey P. Wiesner

Attorney Jeffrey P. Wiesner is a graduate of Hobart College (1994) and Northeastern University School of Law (2002). He is admitted to practice in the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, and the First Circuit Court of Appeals. He has been admitted *pro hac vice* in the Bankruptcy Court of the District of Connecticut, the Bankruptcy Court for the Southern District of New York, and the District Court for the Southern District of Mississippi. Mr. Wiesner is a partner at Stern, Shapiro, Weissberg and Garin, LLP in Boston.

Since his admission to the Bar, Attorney Wiesner's practice has included a wide variety of civil and criminal litigation, including employment litigation. Attorney Wiesner's declaration, attached as Exhibit 2, sets out his full background and experience. In support of the requested

---
[11] Exhibits 10 and 11.

hourly rate of $350 for Attorney Wiesner, plaintiffs have submitted affidavits from Attorneys Kevin Peters and Michael L. Altman.[12]

## 5. Prevailing Rates in the Boston Area Justify the Requested Rates

The marketplace, not the subjective opinions of defense counsel, establishes the hourly rate to be applied to the lodestar. *LaPlante v. Pepe*, 307 F. Supp. 2d 219, 224 (D.Mass. 2004) ("[a] reasonable rate is measured by comparing counsel's regular rates with those of the marketplace.) See also *United States v. Metropolitan Dis. Comm 'n*, 847 F.2d 12, 19 (1st Cir. 1988); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945,950 (1st Cir. 1984). And to account for the delay in counsel receiving payment for services, current rates should be applied to the lodestar, not rates in place when activities took place. *Tulli v. Brigham & Women's Hosp.*, 07-12338-NG.

The marketplace for multi-party wage litigation dictates that the $350.00 and $375.00 hourly rates sought by counsel is justified if not modest. In August of 2009, in *Carter v. Newton Hospitality, Inc.*, SUCV-2007-3383, a wage action, the Superior Court awarded Philip Gordon, the partner in a three-lawyer firm with 14 years experience, an hourly rate of $585 per hour. On February 18, 2010, this Court awarded a lawyer with 11 years of experience Shannon Liss-Riordan, $400.00 per hour in a wage action, *DiFiore v. American Airlines*, 07-10070-WGY. Most recently, by order dated August 22, 2011, in *Davis v. Footbridge Staffing*, 09-11133-NG, this court awarded lead attorney Todd Heyman, who has 12 years of employment law litigation experience, an hourly rate of $650, and $355 per hour for his associates, and $210 for his paralegals.

Further showing the market rate for employment litigation generally, the award in Davis cites an order dated June 8, 2009, in *Tulli v. Brigham & Women's Hospital*, 07-12338-NG, an employment discrimination action, in which this court awarded attorneys from one of Boston's

---
[12] Exhibits 12 and 13.

larger firms rates ranging from $570 to $735 for partners; $410-$495 for a fourth year associate; and $320 to $385 for a second year associate. See also, as cited in *Difiore, supra*, *Fronk v. Fowler*, 22 Mass. L. Rptr. 366 (Mass. Superior Ct. May 21, 2007 (fee awards in employment litigation ranging from $450 to $575 for partners and $195 to $360 for associates); and *Brooks Automation Inc. v. Blue Techs. Inc.*, 21 Mass. L. Rptr. 53 (Mass. Superior Court, April 6, 2006) (awards in employment litigation ranging from $500 to $625 per hour and for associates between $260 to $410.)

Based on these awards, in a marketplace that will reward attorneys from small firms hourly rates between $585 and $650 per hour, the $350.00 hourly rate requested by Attorney Wiesner and $375.00 requested by Attorney Joun is modest. The reasonableness of the requested hourly rates is attested to by the affidavits from Howard Friedman, an attorney with 35 years of experience in civil rights law, Paul Merry, an attorney with 33 years of experience in employment law, Kevin Peters, an attorney with 25 years of civil litigation experience and partner at Arrowood Peters LLP, and Michael L. Altman, an attorney who has practiced in Boston for over 45 years.[13]

### B. As a Matter of Public Policy, Under the FLSA, Fees Awarded Need Not Be Proportional to Damages

Under the FLSA's mandatory fee-shifting provision, an additional factor to consider is that "[i]n FLSA cases, like other discrimination and civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Allende v. Unitech Design, Inc.*, No. 10-4256, 2011 WL 891445, *1 (S.D.N.Y. Mar. 15, 2011), citing *Grochowski v. Ajet Constr. Corp.*, No. 97-6269, 2002 WL 465272, *2 (S.D.N.Y. Mar. 27, 2002)

---

[13] See Exhibits 10-13.

("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'") Moreover, as Judge Ponsor recently commented, "an attorney should not expect to receive less for doing important work on behalf of vulnerable plaintiffs in a piece of hotly contested, complex class litigation ... [t]here is no 'good guy' or 'white hat' fee discount." *Rosie D. v. Patrick*, 593 F. Supp. 2d 325, 330 (D. Mass. 2009).[14]

This concept is important here, because the amount of effort Plaintiffs' counsel was forced to expend to win the judgment forcing Defendants to pay Plaintiffs their back wages for unpaid overtime and to comply with the FLSA yields a lodestar fee greater than the total amount recovered. As discussed previously, in the context of this litigation, given its complexity, the defense position, not to mention the public policy underpinnings of the FLSA just discussed, that is a just and appropriate result.

### C. <u>Litigation Expenses</u>

In addition to recovering attorneys' fees, plaintiffs are entitled to recover reasonable costs litigating their case. Plaintiffs submit a detailed list of the expenses incurred in this litigation in

---

[14] See also *City of Riverside v. Rivera*, 477 U.S. 561, 576-580 (1986) (rejecting argument for rule limiting attorneys' fees to proportion of the damages awarded); *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. Appx. 341, 342 (5th Cir. 2007) (noting common practice for fees to exceed amount of recovery in FLSA cases; affirming $129,805.50 in fees on $23,357.30 award); *Cox. v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (affirming $9,250 fee on $1,281 award); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming $100,000 fee in connection with $18,455 recovery); *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (rejecting proportionality argument and stating fee provisions of FLSA "designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements."); *Pyczynski v. Kirkland's Stores, Inc.*, No. 6:07-cv-802, 2008 WL 544864, *5-6 (M.D. Fla. Feb. 26, 2008) ("Given remedial nature of claims under the FLSA and the remedial purpose of the Act, is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff'; awarding $3,827.50 in fees on $681.11 award); *Norris v. Murphy*, 287 F. Supp. 2d 111, 114, 119 (D. Mass. 2003) (awarding fees of $45,451.36 on $1 award); *Martino v. Mass. Bay Transp. Auth.*, 230 F.Supp.2d 195, 207 (D. Mass. 2002) (awarding $76,977.50 in fees in connection with $50,000 recovery); *Fegley v. Higgins*, 19 F.3d 1126 (affirming fees of $40,000 in connection with $7,680 award); *Hoffman v. S. Garber, Inc.*, No. 92C3535, 1993 WL 189623, *3 (N.D. Ill. June 2, 1993) ("no question that a prevailing party under the FLSA may recover fees that exceed the amount of the judgment in its favor;" awarding $10,679 fee following $1,300 settlement).

the amount of $11,185.28.[15] These costs include filing fees, sheriff/constable fees, depositions, investigators, interpreters and translators and other costs such as postage, copying, travel and parking. Like the records of legal services, the expenses are based on contemporaneous recording of the costs incurred and are reasonable in the context of this litigation.

### IV. CONCLUSION

For the reasons stated above, the Court should grant plaintiffs' petition and award $322,085.00 for attorneys' fees and $11,185.28 for costs against defendants for a total of $333,270.28.

RESPECTFULLY SUBMITTED,

**For Plaintiffs**
By their attorneys,

 /s/ Myong J. Joun
Myong J. Joun
BBO No. 645099
Joun Law Office
491 Massachusetts Ave., Suite 208
Arlington, Massachusetts 02474
Tel.: (617) 304-6186
Fax: (866) 551-4983
Email: mjoun@massrights.com

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for all parties via CM/ECF.

Date: 12/28/2012    /s/Myong J. Joun
                    Myong J. Joun

Dated: December 28, 2012

 /s/ Jeffrey Wiesner
Jeffrey Wiesner
BBO No. 655814
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
Tel.: (617) 742-5800
Fax: (617) 742-5858
Email: jwiesner@sswg.com

---

[15] Exhibit 14.