UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JIN-MING LIN et al<br>Plaintiffs<br><br>v.<br><br>CHINATOWN RESTAURANT<br>CORPORATION et al<br>Defendants | Civil Action No. 2009-cv-11510 |

## DEFENDANTS' JOINT MEMORANDUM IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

### Introduction

Under 29 U.S.C. §216(b), this court is required to add to any judgment recovered by Plaintiffs "a reasonable attorney's fee to be paid by the Defendant." Congress has left it to the courts to decide in each case what a reasonable fee is. On a recovery of $77,700.00 (after doubling of the verdict), Plaintiffs seek attorney's fees in the amount of $322,085.00 plus (undocumented) costs of $11,185.28 for a total of $333,270.28. Because this fee request is in the circumstances utterly unreasonable, Defendants submit that it should be very substantially cut.

### Facts

This was an action of no great complexity. Plaintiffs essentially claimed that they had not been paid for overtime, and the jury agreed, awarding them a total

1

verdict of $38,850.00, which the court doubled to $77,700.00. The essential bone of contention for Plaintiffs other than Lin was whether they worked between 2:00 p.m. and 5 p.m.; but there were also disputes about when they left and, maybe, how much time they had for meals. Almost all of the testimony favorable to Plaintiffs came from Plaintiffs themselves, much of it on leading questions. If unreasonably large amounts of time were expended in the prosecution of the action, the expenditure likely resulted from Plaintiffs' attorneys' lack of familiarity with FLSA cases; neither Mr. Joun's nor Mr. Wiesner's affidavit mentions a single FLSA case or case under cognate Massachusetts laws that either of them handled.

To be sure, there were some complexities in this action that were of Plaintiffs' counsel's own making. For example, William M. Wainwright should never have been made a party to this action, and the court granted his motion to dismiss in open court without hearing argument. We, therefore, are amazed to learn that counsel wish to be paid $7,140.00 for their work with respect to that motion.

In any event, it is not the facts that are in dispute but the significance of the facts, and to that end we turn to written argument.

### Argument

I. **SETTING A REASONABLE FEE.**

2

In ***Perdue v. Kenny A. Ex. Rel.Winn***, 130 S. Ct. 1662, 1672 (2010), the Court noted that the lodestar method was the appropriate way to fix attorney's fees under 42 U.S.C. §1988 and by inference, see *Burlington v. Dague*, 505 U.S. 557, 562 (1992), all federal fee-shifting statutes. This method in turn calls upon a court to set a rate that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation". ***Blum v. Stetson***, 465 U.S. 886, 895 n.11 (1984). The burden of proving an appropriate rate is on the attorney seeking the fees. *Id*.

But this is not the end of the inquiry. As noted in Smolla, Federal Civil Rights Act 3d (2012-2013 ed.) §16.9, pp.947-948 n.3, "the lodestar figure for determining reasonable attorney fee award is calculated by multiplying the number of hours the prevailing party *reasonably* expended on the litigation, as supported by adequate documentation, by a reasonable hourly rate for the region and for the experience of the lawyer". (*Emphasis added*.) Accord: ***Radford Trust v. First Union Life Ins. Co. of America***, 399 F. Supp. 2d 310 (D.Mass. 2005). In considering what was reasonably expended, the court should consider among other factors the complexity of the case, see *Perdue, supra*, 130 S.Ct. at 1681 (Breyer, J. dissenting), and the result achieved as compared with the result desired. To quote from ***Diver v. Goddard Memorial Hosp.***, 783 F.2d 6, 8, (1st Cir. 1986):

3

The Supreme Court has discussed at length the procedure to be used in determining attorney's fees in **Hensley v. Eckerhart**, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (fee award under civil rights statute). Although the Court noted the factors enunciated in **Johnson v. Georgia Highway Express, Inc.**, 488 F.2d 714, 717-19 (5th Cir. 1974), which have often been used by the courts as an aid in setting fees, it stated that "the most critical factor is the degree of success obtained." 461 U.S. at 436, 103 S.Ct. at 1941.

The *Diver* court was correct in looking at the result obtained, for in the famous case of **Hensley v. Eckerhart**, 461 U.S. 424, 436 (1983), the court stated that "the most critical factor [in setting fees] is the degree of success obtained."[1] If that factor can be disregarded in a case in which the outcome promotes some public purpose, *e.g.*, **Duckworth v. Whisenant**, 97 F.3d 1393, 1399 (11th Cir. 1996), this is plainly not such a case.

## II. A REASONABLE RATE FOR THE SERVICES OF ATTORNEYS JOON AND WIESNER WOULD BE UNDER $200.00 PER HOUR.

In **Radford Trust v. First Unum Life Ins. Co. of America, supra,** 399 F.Supp.2d at 15, lead counsel for the plaintiff was Warren H. Pyle. The court noted at p.15:

> Pyle's affidavit demonstrates that he has had a longer career as a labor and employment law attorney in the Boston area. Pyle has practiced labor and employment law since graduating from Harvard Law School in 1958. Pl.'s Atty's Fees Mot. 1, Ex. A ¶¶ 1-2. Pyle is also a chapter editor of a labor law treatise entitled *The Developing Labor Law*, and has "presented papers on a variety of labor and employment

---

[1] The point is further discussed at pages 8-9, *supra*.

4

Mr. Pyle's request was supported by a number of prominent Boston attorneys. Still, his request for $300.00 per hour was denied by the court; indeed the court set his compensation at $250.00 per hour, noting that numerous other prominent Boston attorneys had received that rate in equally complex litigation. 399 F.Supp.2d at 15-16. We suggest that nothing has changed since 2005 that would render the rates approved by the *Radford* court inapplicable. If anything, the recession of 2008 has put the squeeze on lawyers' fees.

With all due respect, if Mr. Pyle with his distinguished reputation and long experience in employment law was to receive only $250.00 as "a reasonable hourly rate," 399 F.Supp.2d at 16, what is a reasonable hourly rate for Messrs. Joun and Wiesner, who seem to have had, at best, slight prior experience in the field of employment law and none in wage and hour cases? Interestingly, neither attorney says a thing about the billing rates that his clients actually pay him to handle litigation. We do not consider the omission inadvertent, noting what was said in ***Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995):**

> In the case of private attorneys, for example, where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award. ***McDonald v. Armonstrout***, 860 F.2d 1456, 1459 (8th Cir. 1988). As the third Circuit has noted, normal billing rates usually "provide an efficient and fair short cut for determining the market rate." ***Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.***, 995 F.2d 414, 422 (3d Cir. 1993).

5

*Assoc., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir. 1993).

We submit that the attorneys are seeking precisely what the Supreme Court and numerous other federal courts have said they are not entitled to: a windfall. *E.g.,* **Perdue**, *supra.* And we are bold to suggest that a rate of $150.00 per hour would be appropriate for Mr. Joun and $125.00 per hour for Mr. Wiesner,[2] assuming, but see Argument IIIA, *infra,* that Mr. Wiesner is entitled to be separately compensated.

We make this recommendation in part, but only in part, because neither attorney's affidavit shows any familiarity with federal or state wage and hour cases. The most that either one can say, Joun Affidavit, ¶6; Wiesner Affidavit, ¶7, is that he has represented Plaintiffs in cases involving "employee rights" or that were "employee-related." This lack of experience militates against a larger fee because it necessarily involves a steeper learning curve. The Supreme Judicial Court of Massachusetts, which has primary jurisdiction in regulating the conduct of Massachusetts lawyers, addressed a similar point in **In The Matter Of Fordham,** 423 Mass. 481, 668 N.E.2d 816 (1996) cert. den. 519 U. S. 1149. There, an attorney with a distinguished reputation but with no prior experience in representing persons accused of operating under the influence, undertook to

---

[2] This was the hourly rate fixed by the court in *Radford Trust, supra,* 399 F. Supp. 2d at 16-17, for Attorney Highet, who specialized in labor and employment law.

represent a person charged with that offense and ended up billing over $50,000.00 for his services. 423 Mass. at 483-484. The SJC determined that he charged an excessive fee and should be publicly censured. Id. 493-494. What was stated at p.480 bears repeating here:

> The board determined that "[b]ecause [Fordham] had never tried an OUI case or appeared in the district court, [Fordham] spent over 200 hours preparing the case, in part to educate himself in the relevant substantive law and court procedures." Fordham's inexperience in criminal defense work and OUI cases in particular cannot justify the extraordinarily high fee. It cannot be that an inexperienced lawyer is entitled to charge three or four times as much as an experienced lawyer for the same service. A client "should not be expected to pay for the education of a lawyer when he spends excessive amounts of time on tasks which, with reasonable experience, become matters of routine." **Matter of the Estate of Larson,** 1032 Wash. 2d 517, 531 (1985).

### III. MUCH OF THE TIME SPENT BY THE ATTORNEYS WAS NOT REASONABLY EXPENDED.

A. The need for two attorneys.

Mr. Joun, the lead attorney, makes no effort to explain why he needed assistance from Mr. Wiesner, whose background, according to his affidavit, seems to be almost entirely in criminal law or cases relating to criminal law. Nor do we understand why Mr. Wiesner's services were required. As we have already noted, neither conceptually nor practically was this a difficult case. True, in the course of discovery a question of more than passing interest arose: namely, whether in light of *Hoffman Plastic Compounds, Inc. v. NLRB,* 535 U.S. 137, 140-141 (2002), an

FLSA plaintiff could be required to divulge his status *vel non* as an undocumented alien. Eventually this Court ruled in Plaintiffs' favor on that issue.[3] But on this point, Mr. Wiesner seems to have spent only forty-eight minutes on April 10, 2010, which must have been spent in opposing Defendants' motion for reconsideration.

There may be FLSA cases that have complex issues such as whether an employee who performs both management and non-management duties is exempted from FLSA or what constitutes regular pay. If so, this was not such a case. No cases involving different parties and different occurrences are ever identical. But nothing about this action should have suggested that it required the services of more than one attorney to represent Plaintiffs' interests. Accordingly, we submit that Mr. Wiesner's bill should be totally disregarded and that he and Mr. Joun should be left to devise among themselves a reasonable division of whatever fee is awarded to Mr. Joun.

One other issue warrants further consideration in determining what is a reasonable fee. This was Plaintiffs' counsel's two settlement demands for $490,000.00 and later $500,000.00, both made prior to trial and the latter made *even after* five counts of the complaint were dropped and only seven (later six) viable plaintiffs opted in. Berman Affidavit, ¶7. The final award was approximately twenty percent of the amount supposedly due Plaintiffs We suggest

---

[3] As the court noted, this was hardly an issue of first impression.

that zealous advocacy includes not only pursuing a reasonable judgment for one's clients but also pursuing a reasonable settlement of the claims. In any event, we point out what was said in **Hensley v. Eckerhart,** 461 U.S. 424, 436 (1983):

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the Plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

If $193,980 was indeed the judgment award that Plaintiffs' attorneys expected, then the success obtained was woefully short of the expectation.

B. Other services performed by the attorneys were altogether or partially not compensable.

We attach hereto the attorneys' billing records. After each disputed item we have placed a circled number, and in the remainder of this opposition we shall explain, based on that number, our objection. Intra-office conferences and meetings have received a checkmark indicating that in the absence of any showing of why they were necessary, they should not be compensated at all:

1. This appears to be an initial meeting at which the clients determined whether to retain the attorney. It is not normally compensable.

2. Preparation of the complaint including editing is an appropriate litigation expense. But here the complaint contained six counts, all but one of which were, under pressure from the court, ultimately dropped. In these circumstances counsel should not be compensated for any work unrelated to the FLSA claims. See *Hensley v. Eckerhart*, supra, 461 U.S. at 434-436.

3. Mr. Wainwright's motion to dismiss was allowed without hearing in open court. No corporate officer other than Joyce Hayes, who was also the manager, became a party. Counsel are not entitled to compensation for opposing dismissal sought by a party whom they should not have joined.

4. The amount of work on Plaintiffs (meager) automatic disclosures seems unduly protracted.

5. If a motion to extend time is compensable at all, 1 ½ hours is excessive.

6. In light of the unreasonableness of the demand ($490,000.00), there should be no compensation for this. Besides, 2 ½ hours for drafting this letter is excessive.

7. 11.7 hours for preparing and opposing motions to compel is excessive.

8. See #5. 18 minutes to draft an assented-to motion to extend time is excessive.

9. See #5. 54 minutes to draft an assented-to motion to extend time is excessive.

10. The motion for contempt was denied and should not be compensated.

11. What "prepare class mailings" means is uncertain, but since the notice had already been finalized, 3.2 hours on this is excessive.

12. The interpreter (at depositions) was supposed to be a neutral party. Mr. Joun should not have explained the case to her or done more than give her directions to his office if necessary. Had Defendants' counsel been aware of these lengthy conversations with the interpreter, they might well have objected to her serving in that capacity.

13. The motion was denied and the time spent preparing it is not compensable.

14. Mr. Zhi was ultimately dropped as a Plaintiff and the meetings with him are not compensable.

15. See #6.

16. In light of the 1.8 hours spent on June 5, 2012 drafting the amended (one count largely transposed from original complaint) complaint, the additional 2.3 hours is excessive.

17. Attorney Karplus's role is utterly unexplained.

18. The motions in limine were unnecessary. They were either assented to or denied.

19. It is difficult to conceive that the Friday before trial Mr. Joun was researching the overtime rate.

20. Mr. Lee was on the witness stand for at most one hour including cross-examination. He had been deposed before trial. It is difficult to understand why preparation of his examination took 3.4 hours.

21. Travel to and from Quincy is unexplained.

22. Travel to and from Lowell is unexplained.

23. Travel to and from Chinatown is unexplained.

24. In light of the numerous courier services available in Greater Boston, a fee of $280.00 to deliver a memo is patently unreasonable.

25. Merely by calling Mr. Lyness's phone number on the morning of October 30, 2012, counsel would have found out that the court was closed.

26. These motions of Defendant were entirely successful and although, with respect to the discovery motions the court denied costs and attorney's fees, there is no reason why Plaintiffs' counsel should be compensated for opposing them.

27. The work appears to be duplicative of work done by Mr. Joun.

28. This appears to be work that normally would be performed by a paralegal, not an attorney billing at the rate of $375.00 or $350.00 per hour.

29. Nature of service is unclear.

30. Travel to Brockton is unexplained.

31. The time spent on this drafting is excessive.

IV. COSTS

We quote from **Duckworth v. Whisenant, supra,** 97 F.3d at 1399, cited with approval by Smolla, *op. cit.*, §16.14, pp.965-966:

> Plaintiff's affidavits appear to include costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees, which are clearly nonrecoverable. See 28 U.S.C. s1920; see e.g., ***Kivi v. Nationwide Mut. Ins. Co.,*** 695 F.2d 1285, 1289 (11th Cir. 1983) ("additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in federal courts."); ***Cullens v. Georgia Dept. of Transp.,*** 827 F.Supp. 756, 766 (M.D.Ga.1993).

To the extent that Plaintiffs seek costs disallowed in **Duckworth,** including travel costs and parking fees, they should be disallowed.

### Conclusion

Mr. Joun is entitled to attorney's fees and some costs but certainly not on the scale that he has requested. No fees or costs should be awarded to Mr. Wiesner.

<table>
<tr><td>

*/s/Lawrence M. Siskind*

Lawrence M. Siskind
BBO No. 465180
Siskind & Siskind, LLC
360 Belmont Street
Brockton, MA 02301
Tel: (508) 588-5015
Fax: (508) 588-5019
(lawrence@siskindlaw.com)

</td><td>

Respectfully submitted,
Defendants' Attorneys,

*/s/David Berman*

David Berman
BBO No. 040060
100 George P. Hassett Drive
Medford, MA 02155-3297
Tel: (781) 395-7520
Fax: (781) 395-9658
davidberman2@verizon.net

</td></tr>
</table>

### CERTIFICATE OF SERVICE

Counsel for Defendant, Chinatown Restaurant Corporation on this 18th day of January, 2013, caused to be served via electronic transmission the following: *Defendants' Joint Memorandum in Partial Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs* upon the following:

<table>
<tr><td>

**MYONG J. JOUN**
(mjoun@massrights.com)
*Joun Law Office*
491 Massachusetts Ave.,
Suite 208
Arlington, MA 02474

</td><td>

**JEFFREY WIESNER**
(jwiesner@sswg.com)
*Stern, Shapiro, Weissberg & Garin, LLP*
90 Canal Street,
Suite 500
Boston, MA 02114-2022

</td></tr>
</table>

*/s/David Berman*
David Berman
BBO No. 040060

*January 18th 2013*